UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                  :

CYNTHIA MONTERROSO,              :

                     Plaintiff,   :

                                    :                22 Civ. 7142 (LGS)

            -against-              :

                                    :        **OPINION AND ORDER**

CITY OF NEW YORK, et al.,         :

                     Defendants.  :

                                    :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

        Pro se Plaintiff's Amended Complaint (the "Complaint") alleges violations of the Americans with Disabilities Act (the "ADA"), the Rehabilitation Act of 1973 (the "Rehabilitation Act"), the Fair Housing Act (the "FHA"), the New York State Human Rights Law (the "NYSHRL") and the Fourteenth Amendment of the United States Constitution. Defendants are the City of New York and the Mayor's Office of Housing Recovery Operations. Plaintiff seeks resolution of all alleged accommodation issues in her favor, as well as compensatory and punitive damages. Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion is granted.

## I.    BACKGROUND

        The following facts are taken from the Complaint or "documents incorporated into the complaint by reference." *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021).[1] Because Plaintiff is pro se, new factual allegations raised in her opposition to the motion are also considered. *See Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014); *accord Thompson v. Renee*, No. 21 Civ. 10371,

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes and citations are omitted.

2023 WL 2575222, at *2 (S.D.N.Y. Mar. 17, 2023).  These facts are assumed to be true for purposes of this motion.  *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 104 (2d Cir. 2021).

Plaintiff has several medical conditions that render her permanently disabled, including asthma and injuries to her cervical, thoracic and lumbar spine, as well as shoulder, hand and foot injuries.  These conditions cause her to suffer chronic pain, limit her mobility and are often exacerbated by minor activities.  Because of her disabled status, Plaintiff is unable to work.

Plaintiff's home and most of her belongings were destroyed by Hurricane Sandy in October 2012.  Defendants City of New York (the "City") and the Mayor's Office for Housing Recovery Operations constructed a new home for Plaintiff as part of its Build-It-Back Program (the "Program"), using a grant from the U.S. Department of Housing and Urban Development ("HUD").  Plaintiff took possession of the new home on August 28, 2020, but does not currently live there because no Certificate of Occupancy ("CO") has issued and work permits remain open.  Although the City has issued several temporary COs, these have periodically lapsed, rendering Plaintiff's occupancy of the home illegal.  Because Plaintiff is unable to move repeatedly in and out of the home due to her disabilities, she has not moved in, fearing that future lapses in the temporary COs would require her to move out.[2]

The Complaint alleges that the City "failed to administer the [HUD] grant properly according to [the City's] own policies, procedures, rules, zoning[] laws and grant program guidelines."  The City "failed to repair [its] construction and warranty issues," "allowed its

---

[2] Defendants' recent status letter states that the Final Certificate of Occupancy has been issued and that Plaintiff has since moved into the home.  Other deficiencies described in the Complaint may have been remedied and others may have arisen.  Nevertheless, Defendants' challenge to the Complaint is based on whether the facts as alleged are sufficient to state a claim, as discussed in the Legal Standard section below.

contractors to damage [Plaintiff's] home," "allowed its contractors to trespass and then turn off a [water] utility," "failed to implement reasonable accommodations" related to Plaintiff's disability, and "changed an existing pattern and practice regarding an accommodation issue." These problems have prevented Plaintiff from using and enjoying the home in a reasonable manner.  The Complaint also avers that Plaintiff has "been precluded from standard guidelines granted to other applicants regarding material choices, taxation, valuation, occupancy, use, potential sale of [the] home, [and] use of [the] home as collateral."

The Complaint provides detailed descriptions of the home's features that are incompatible with Plaintiff's disabilities or have aggravated her physical condition.  They include gravel in the yard space; a too-narrow driveway; inconvenient placement of the emergency switch for the lift that was installed to obviate Plaintiff's use of the stairs; a lack of space for a generator; an inadequate walk-in bathtub; a too-high toilet; insufficient attic access; an HVAC system that does not function properly; insufficient kitchen cupboard and counter space and an unusable microwave, among many other problems.  Because of these deficiencies, Plaintiff does not have the same use of her property as an able-bodied participant in the Program, which the Complaint alleges is discriminatory.  The Complaint also asserts that the City's requirement of an eight-hour window for repair appointments, during which Plaintiff must vacate the property, is incompatible with her limited mobility.

The Complaint seeks resolution of the accommodation, discrimination, construction and warranty issues, and requests both compensatory and punitive damages.  In addition to this federal action, Plaintiff has filed a lawsuit in state court against the City, pursuant to Article 78 of the New York Civil Practice Law and Rules.

## II.    LEGAL STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020). It is not enough for a complaint to allege facts that are consistent with liability; it must "nudge[]" claims "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Estate of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). To survive dismissal, "plaintiffs must provide the grounds upon which [their] claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019).

It is well established that "pro se submissions are reviewed with special solicitude and must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Barnes v. City of New York*, 68 F.4th 123, 127 (2d Cir. 2023). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021).

4

III.    **DISCUSSION**

A.      **ADA and Rehabilitation Act Claims**

Defendants' motion to dismiss the Complaint's ADA and Rehabilitation Act claims is

granted.  Title II of the ADA states, "no qualified individual with a disability shall, by reason of

such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity."

42 U.S.C. § 12132.  The statute defines "public entity" to include "any State or local

government," such as the City.  *See* 42 U.S.C. § 12131(1)(A).  Similarly, the Rehabilitation Act

states, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or

his disability, be excluded from the participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C.

§ 794(a).

"Because the standards imposed by Title II on public entities are generally equivalent to

those of . . . the Rehabilitation Act," courts in the Second Circuit "treat claims under the two

statutes identically in most cases."  *Tardif v. City of New York*, 991 F.3d 394, 406 n.10 (2d Cir.

2021).  To state a prima facie claim of disability discrimination under the ADA or Rehabilitation

Act, a plaintiff must demonstrate "(1) that she is a qualified individual with a disability; (2) that

she was excluded from participation in a public entity's services, programs or activities or was

otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination

was due to her disability."  *Id.* at 404.  "A plaintiff bringing a Rehabilitation Act claim must also

establish that the defendant receives federal funding."  *Davis v. Shah*, 821 F.3d 231, 260 n.17 (2d

Cir. 2016).  Plaintiff sufficiently alleges, and Defendants concede, that she is a qualified

individual with a disability, that the Program is a public entity's program, and that Defendants

receive federal funding from HUD.  The viability of the ADA and Rehabilitation Act claims therefore turns on whether the Complaint sufficiently alleges that Plaintiff was "excluded from participation in [the Program] or was otherwise discriminated against by [Defendants]" and "that such exclusion or discrimination was due to her disability."  *Tardif*, 991 F.3d at 404.

A plaintiff "may base her Title II claim on any of three theories of liability: disparate treatment (intentional discrimination), disparate impact, or failure to make a reasonable accommodation."  *Id.*  Under a disparate treatment theory, a plaintiff alleges that her disability actually motivated the defendant's challenged adverse conduct.  *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 52-53 (2003); *accord Whitney v. Montefiore Med. Ctr.*, No. 21 Civ. 9623, 2023 WL 7386400, at *10 n.6 (S.D.N.Y. Nov. 8, 2023).  Alternatively, a plaintiff can assert a disparate impact theory, claiming that a government policy, though neutral on its face, "fall[s] more harshly on one group than another and cannot be justified by business necessity."  *Raytheon Co.*, 540 U.S. at 52; *accord Whitney*, 2023 WL 7386400, at *10 n.6.  Finally, a plaintiff can assert that a public entity has refused affirmatively to accommodate her disability where such an accommodation was needed to provide "meaningful access to a public service."  *Henrietta D. v. Bloomberg*, 331 F.3d 261, 276 (2d Cir. 2003).

Common to these three theories of liability under the ADA and Rehabilitation Act is that they "are addressed to rules that hurt people with disabilities *by reason of their handicap*, rather than that hurt them solely by virtue of what they have in common with other people."  *Henrietta D.*, 331 F.3d at 276 (emphasis in original).  "Where an individual challenges the substance of the services provided -- rather than illegal discrimination -- there is no ADA violation."  *Tardif*, 991 F.3d at 405; *see also Doe v. Pfrommer*, 148 F.3d 73, 83-84 (2d Cir. 1998) ("[T]he central purpose of the ADA and § 504 of the Rehabilitation Act is to assure that disabled individuals

receive evenhanded treatment in relation to the able-bodied . . . [W]hat [plaintiff] ultimately

seeks to challenge is not illegal discrimination against the disabled, but the substance of the

services provided to him . . . .").

      While the Complaint at times relies on each of these theories of liability, the Complaint

does not allege that Plaintiff is discriminated against because of her disability.  At times, the

Complaint suggests intentional discrimination by the Defendants.  For example, the Complaint

alleges that the City "changed an existing pattern and practice regarding an accommodation

issue" and then used that change "in a harassing and intimidating manner" toward Plaintiff.  The

same paragraph further states that Defendants "are holding a disabled applicant to a different

standard and policy than other applicants that received a properly constructed home."  Plaintiff's

opposition to the motion argues that the City "built [the home] incorrectly intentionally."

Despite these allegations, the Complaint does not include facts that, if true, would show that

Defendants' alleged misconduct regarding her home was motivated by discriminatory animus --

i.e., because of Plaintiff's disability.  The Complaint lacks sufficient allegations to state a claim

of intentional discrimination under the ADA or the Rehabilitation Act.

      Elsewhere, the Complaint advances its claims under a reasonable accommodation

theory.  To determine whether a public entity has failed to make reasonable accommodation,

courts look to "whether a plaintiff with disabilities as a practical matter was denied meaningful

access to services, programs or activities to which he or she was legally entitled." *Brooklyn Ctr.*

*for Indep. of the Disabled v. Metro. Transp. Auth.*, 11 F.4th 55, 62 (2d Cir. 2021).  "An

accommodation must overcome structural impediments and non-trivial temporal delays that limit

access to programs, services, and activities." *Id.*  Here, the Complaint does not allege facts

showing a denial of meaningful access to services on account of Plaintiff's disability.

The Second Circuit's decision in *Tardif v. City of New York* is instructive.  The Court held that a police failure to provide the plaintiff her epilepsy medication while she was in custody was not "a failure to make reasonable accommodation 'by reason of' an individual's disability under the ADA."  991 F.3d at 404.  The Court observed that the plaintiff's epilepsy did not cause the deprivation of medical services, but instead was the motivation for her seeking the services.  *Id*. at 405.  "The ADA prohibits discrimination because of disability, not inadequate treatment for disability."  *Id*. at 406.  The Court concluded that "the issue here is not whether [the plaintiff] was denied medical services *because* she has a disability.  Instead, her claim relates solely to whether she received adequate medical treatment in police custody *for* her disability, and such a claim is not cognizable under the ADA."  *Id.* at 405 (emphasis in original).  Similarly, in *Doe v. Pfrommer*, the Second Circuit held that there is no ADA violation where the plaintiff challenges "the substance of the services provided" rather than the denial of services to a disabled person because she is handicapped.  148 F.3d at 84.

So too here, the Complaint does not allege facts to show that Plaintiff was denied housing *because* of her disability.  Instead, her claim relates solely to whether Plaintiff received adequate housing *for* her disability.  Consequently, the Complaint fails to state a claim under the ADA or the Rehabilitation Act.

### B.    Fair Housing Act and New York State Human Rights Law Claims

Although the Complaint does list the FHA as one of the federal laws giving rise to Plaintiff's claims, the Complaint does state that Plaintiff's home violates FHA standards.  Because pro se filings are "construed liberally and interpreted to raise the strongest arguments they suggest," *Barnes*, 68 F.4th at 127, an FHA claim based on a theory of reasonable accommodation is considered here.  The NYSHRL "likewise makes it unlawful to refuse to

make such accommodations." *Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 156 (2d Cir. 2014).

However, the Complaint does not sufficiently plead a failure-to-accommodate claim under the

FHA or NYSHRL.

The FHA prohibits a housing provider's "refusal to make reasonable accommodations in

rules, policies, practices, or services, when such accommodations may be necessary to afford [a

handicapped] person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

To state a failure-to-accommodate claim under the FHA (or under the NYSHRL), a plaintiff

must allege facts showing (1) that the plaintiff or a person living with the plaintiff had a

disability as defined by the FHA, (2) that the defendant knew or reasonably should have known

of the disability, (3) that the accommodation was likely necessary to afford the disabled person

an equal opportunity to use and enjoy the dwelling, (4) that the accommodation requested was

reasonable, and (5) that the defendant refused to make the requested accommodation. *See Olsen*,

759 F.3d at 156; *accord Sykes v. New York City Hous. Auth.*, No. 22 Civ. 2127, 2022 WL

2908015, at *4 (S.D.N.Y. July 22, 2022). "Plaintiffs must show that, but for the accommodation,

they likely will be denied an equal opportunity to enjoy the housing of their choice." *Olsen*, 759

F.3d 156. "Requested accommodations are reasonable where the cost is modest and they do

not pose an undue hardship or a substantial burden on the housing provider." *Id.*

A number of Plaintiff's requests are unrelated to her disabilities, which makes those

claims insufficient under the FHA. *See Perricone-Bernovich v. Tohill*, 843 F. App'x 419, 421

(2d Cir. 2021) (summary order) (holding that the plaintiff had failed to state a failure-to-

accommodate claim under the FHA because the plaintiff "did not argue that her requests were

related to her disabilities."). For example, the Complaint states that because Plaintiff's side yard

is cemented, it "does not allow for plantings or a place for [her] dog to use." Plaintiff's front

stairs are "within six inches of the sidewalk," and she "is not able to fence the front of [her] property." There is also no space for a generator on Plaintiff's property. The home's attic has less storage space than the property Plaintiff lived in prior to Hurricane Sandy. Elsewhere, the Complaint effectively concedes that, while not necessarily up-to-par with Plaintiff's expectations, the home's features nonetheless afford her the ability to use and enjoy the dwelling. *See Olsen*, 759 F.3d at 156. For example, the Complaint states that the driveway curb is "8' and usable" but would be easier to use if it were 10 feet wide.

"The duty to make reasonable accommodations is framed by the nature of the particular handicap." *Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293, 301 (2d Cir. 1998); *accord Higgins v. 120 Riverside Boulevard at Trump Place Condo.*, No. 21 Civ. 4203, 2021 WL 5450205, at *4 (S.D.N.Y. Nov. 19, 2021). Thus, the FHA is "addressed to rules . . . that hurt people with disabilities *by reason of their handicap*, rather than that hurt them solely by virtue of what they have in common with other people." *Henrietta D.*, 331 F.3d at 276; *accord Higgins*, 2021 WL 5450205, at *4 (quoting *Henrietta D.* in the fair-housing context). "A plaintiff is not entitled to *preferential* enjoyment of her housing solely by virtue of her disability." *Higgins*, 2021 WL 5450205, at *4. "Rather, she must show that, but for the accommodation, she has been denied or likely will be denied an *equal* opportunity to enjoy the housing of her choice." *Id.* (emphasis in original). Many of the Complaint's allegations, though identifying features of the home that are not to Plaintiff's liking, fail to explain how Plaintiff's handicaps prevent her enjoyment of the home, and how reasonable accommodations could compensate for the diminished use caused by these disabilities.

The Complaint's FHA claim fails for the independent reason that it does not sufficiently allege that the requested accommodations are reasonable or that Defendants have refused to

make them.  "Although a public entity must make reasonable accommodations, it does not have to provide a disabled individual with every accommodation [she] requests or the accommodation of [her] choice."  *McElwee v. Cnty. of Orange*, 700 F.3d 635, 641 (2d Cir. 2012); *accord Lee v. Saul*, No. 19 Civ. 6553, 2022 WL 1051216, at *6 (S.D.N.Y. Feb. 10, 2022).  The Complaint concedes that Defendants offered to make requested repairs.  It also acknowledges that the City has issued temporary Certificates of Occupancy, and made a number of alterations to the design of the home to accommodate Plaintiff's disabilities, including the installation of a lift and ADA-compliant kitchen.  These allegations bely the Complaint's gravamen that Defendants have not worked with Plaintiff to construct a home that Plaintiff may use and enjoy.

In sum, a sufficient FHA claim must state each requested accommodation and describe when and how it was requested.  *Olsen*, 759 F.3d at 156; *accord Taylor v. Harbour Pointe Homeowners Ass'n*, 690 F.3d 44, 49 (2d Cir. 2012) (stating that a plaintiff must give the defendant "an opportunity to accommodate her," meaning that the "defendants must have had an idea of what accommodation [was] sought prior to their incurring liability for failing affirmatively to grant a reasonable accommodation.").  The claim must also allege facts showing that the accommodation is reasonable, particularly with regard to any alternative accommodation proposed by Defendants.  *Olsen*, 759 F.3d at 156; *accord Higgins*, 2021 WL 5450205, at *4.  The claim also must explain why the accommodation is necessary to afford a disabled person an equal opportunity to use and enjoy the home, and state that Defendants have denied that accommodation or a reasonable alternative.  *Olsen*, 759 F.3d at 156; *accord Higgins*, 2021 WL 5450205, at *4.  As the current Complaint lacks these necessary allegations, the FHA claims are dismissed.

C.      The Fourteenth Amendment Claim

Defendants' motion to dismiss the Complaint's Fourteenth Amendment claims is granted

because the Complaint does not state a claim under either the Due Process Clause or the Equal

Protection Clause.  The Fourteenth Amendment of the U.S. Constitution requires that no state

"deprive any person of life, liberty, or property, without due process of law; nor deny to any

person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV.

"The Due Process Clause is violated when a claimant is deprived of a protected liberty or

property interest without adequate process."  *Tooly v. Schwaller*, 919 F.3d 165, 172 (2d Cir.

2019).  The Complaint alleges that the City's actions amount to a constructive seizure of her

property because "[t]here is no required final Certificate of Occupancy . . . and work permits

remain open."  Because no final CO has issued, Plaintiff "cannot legally occupy [her] home, use

it as collateral . . ., sell it or remodel it."  While the delay in the issuance of a final CO is

understandably frustrating to Plaintiff, these allegations do not amount to a due process violation.

The Complaint does not allege that Plaintiff has been barred from seeking a CO through the

usual administrative process, or that her request for a CO will be inevitably denied once she

completes the requisite steps in that process.  *See Thomas v. Town of Mamakating*, 792 F. App'x

24, 27 (2d Cir. 2019) (summary order) (explaining that land-use disputes are not ripe for

adjudication under substantive or procedural due process challenges "until the local regulatory

body has rendered a final decision regarding the use of the property at issue").  The City has also

worked to ameliorate the inconvenience of the delayed final CO, as the Complaint describes,

through the issuance of "a series of temporary [COs]."  This undermines a claim for deprivation

of a property interest without adequate process.

Under the Equal Protection Clause, the standard of "strict scrutiny" is applied to the review of laws or government actions that "target a suspect class." *Clementine Co., LLC v. Adams*, 74 F.4th 77, 89 (2d Cir. 2023). To survive strict scrutiny, the government must demonstrate that its action "is narrowly tailored to advance a compelling government interest." *We the Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 76 F.4th 130, 144 (2d Cir. 2023). However, individuals with disabilities are not considered members of a suspect or quasi-suspect class for the purpose of an equal protection claim. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 368 (2001) ("If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause."); *accord Sykes*, 2022 WL 2908015, at *6 (S.D.N.Y. July 22, 2022).

A "class of one" equal protection claim may be brought where the plaintiff alleges "[1] that she has been intentionally treated differently from others similarly situated and [2] that there is no rational basis for the difference in treatment." *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). "In order to succeed on a 'class of one' claim, the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." *Id.* at 92. More precisely, a plaintiff must establish that she and a comparator are "prima facie identical" by showing that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Id.*

The Complaint does not satisfy this "extremely high" similarity standard. The Complaint alleges that Plaintiff has "been precluded from standard guidelines granted to other applicants

regarding material choices, taxation, valuation, occupancy, use, potential sale of [the] home, [and] use of [the] home as collateral." This amounts to a conclusory allegation, as the Complaint offers no further details to color the claim of disparate benefits "granted to other applicants." Nor does the Complaint sufficiently spell out how Plaintiff is "identical" to the "other applicants." To succeed on a "class of one" equal protection claim, a complaint must identify the comparators against whom a plaintiff intends to contrast her situation, explain with specificity how their circumstances are identical, and allege that no legitimate government policy could justify the discrepancy between the plaintiff's treatment and the treatment of other similarly situated individuals. *See Walker v. Capra*, No. 22 Civ. 7638, 2024 WL 21938, at *10 (S.D.N.Y. Jan. 2, 2024). Because the Complaint does not do that, the equal protection claim is dismissed.

### D. Punitive Damages

The Complaint seeks, among other things, punitive damages. It is well established that punitive damages against municipalities are not available "unless expressly authorized by statute." *Cook Cnty. v. U.S. ex rel. Chandler*, 538 U.S. 119, 129 (2003); *accord Jones v. City of New York*, No. 18 Civ. 1937, 2020 WL 1644009, at *17 (S.D.N.Y. Apr. 2, 2020) ("[P]unitive damages are not available against government entities."). As both Defendants in this action are municipal entities, and no statute expressly authorizes the availability of punitive damages against them, such damages are not recoverable in this action.

### E. *Colorado River* Abstention

Invoking *Colorado River*, Defendants request that consideration of this matter be stayed or dismissed pending a decision on Plaintiff's related Article 78 action in state court. That request is denied.

"A federal court [may] abstain from exercising its jurisdiction in certain exceptional circumstances . . . when parallel state-court litigation could result in comprehensive disposition of litigation and abstention would conserve judicial resources." *LeChase Constr. Servs., LLC v. Argonaut Ins. Co.*, 63 F.4th 160, 166 (2d Cir. 2023) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Mochary v. Bergstein*, 42 F.4th 80, 85 (2d Cir. 2022). "Merely raising an alternative theory of recovery, which may still be raised in state court, is not enough to differentiate the federal suit from the state suit." *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 362 (2d Cir. 1985); *accord Bulgari v. Bulgari*, No. 22 Civ. 5072, 2023 WL 3647378, at *4 (S.D.N.Y. May 25, 2023).

When there is a parallel state proceeding, federal district courts consider the following six factors to determine whether a *Colorado River* abstention is appropriate, with the balance heavily weighted in favor of the exercise of jurisdiction: (1) assumption of jurisdiction over a res; (2) inconvenience of the federal forum; (3) avoidance of piecemeal litigation; (4) order in which the actions were filed; (5) the law that provides the rule of decision; and (6) protection of the plaintiff's federal rights. *Mochary*, 42 F.4th at 85.

*Colorado River* abstention is inappropriate here because the state court action is not parallel. "[P]arallelism is a necessary prerequisite to abstention under *Colorado River*" and requires "a threshold determination" by the Court before reaching the abstention factors. *Id.* at 85-86. Plaintiff's petition in the Article 78 action briefly alleges that the City "used federal grant money improperly" while rebuilding Plaintiff's home. It also states that "[m]any issues remain unresolved" including the lack of a certificate of occupancy and construction and

accommodation issues.  The state petition does not mention any of the causes of action raised in the present matter, including those brought under the ADA, FHA or federal Constitution.  "Mere commonality in subject matter does not render actions parallel."  *Mochary*, 42 F.4th at 86.  The Article 78 petition describes the sought-after relief in broad, albeit vague, terms: that the state court "solve the many issues with [Plaintiff's] Build it Back application."  This is distinct from the relief sought in the present Complaint, which asks for resolution of all alleged accommodation issues in Plaintiff's favor, as well as compensatory and punitive damages.  As stated above, punitive damages are not available in this action.  Nevertheless, Plaintiff seeks relief in the present action that is distinct from that sought in her pending state action.

Even if the two actions were parallel, the *Colorado River* factors overwhelmingly counsel against abstention.  Neither the federal nor the state case involves jurisdiction over a res.  The federal forum, in Manhattan, is no more or less convenient to Defendants than the state forum.  And Plaintiff seeks protection of her federal rights, invoking protections under federal statutes and the U.S. Constitution.  Defendants have not convincingly argued that *Colorado River* abstention is appropriate here.  The abstention request is declined.

**F.     Leave to Replead**

In her memorandum of law in opposition to the motion, Plaintiff requests that she be granted leave to amend the Complaint if the motion is successful.  "[A] pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015); *accord Kelly v. N.Y. State Unified Ct. Sys.*, No. 21-1633, 2022 WL 1210665, at *2 (2d Cir. Apr. 25, 2022) (summary order).  However, leave to amend may be denied where amendment would be futile.  *Garcia v. Superintendent of Great Meadow Corr.*

16

*Facility*, 841 F.3d 581, 583 (2d Cir. 2016); *accord LeClair v. Raymond*, No. 22 Civ. 309, 2023 WL 6632949, at \*2 (2d Cir. Oct. 12, 2023) (summary order).  Amendment is futile if the new complaint could not withstand a motion to dismiss.  *F5 Cap. v. Pappas*, 856 F.3d 61, 89 (2d Cir. 2017); *accord Edwards v. Black*, 854 F. App'x 382, 386 (2d Cir. 2021) (summary order).

By **February 29, 2024**, Plaintiff may file a letter seeking leave to amend her complaint and attaching any supplemental factual allegations that would remedy the deficiencies in her ADA, Rehabilitation Act, FHA, NYSHRL and Equal Protection claims identified in this Opinion.  Leave to amend the Due Process claim is denied, as there are no factual allegations that could provide a legally sufficient basis for that claim.  If Plaintiff cannot add the necessary additional allegations, she should file a letter stating that she does not seek leave to amend, and the case will be closed pursuant to this Opinion and Order.

The supplemental allegations should offer only additional facts not already stated that would support the Complaint.  The supplemental allegations should be organized according to the law under which they are made -- i.e., the factual allegations that support an ADA claim, the factual allegations that support an FHA claim, etc.

To state a sufficient ADA or Rehabilitation Act claim, the supplemental allegations must contain facts that, if true, would show that Plaintiff was discriminated against because of her disability, not just that she was provided housing that was inadequate in light of her disability. *See Tardif*, 991 F.3d at 405.

To state a sufficient FHA claim, the supplemental allegations must contain facts that, if true, would show that Defendants refused to make necessary accommodations for Plaintiff.  A necessary accommodation is not one that simply satisfies an aesthetic or functional preference. It must be "necessary to afford [a handicapped] person equal opportunity to use and enjoy a

dwelling." 42 U.S.C. § 3604(f)(3)(B).  Accordingly, the supplemental allegations must describe each requested accommodation and when and how it was requested.  The allegations must also contain facts showing that each accommodation is reasonable, particularly with regard to any alternative accommodation proposed by Defendants.  They also must explain why the accommodations are necessary to afford a disabled person an equal opportunity to use and enjoy the home, and state that Defendants have denied those accommodations or a reasonable alternative.

To state a sufficient equal protection claim under a "class of one" theory, the supplemental allegations must identify specific comparators against whom Plaintiff intends to contrast her situation, explain with specificity how their circumstances are identical, and allege that no legitimate government policy could justify the discrepancy between Plaintiff's treatment and the treatment of the other individuals she has identified.

## IV.    CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED.  Plaintiff may file a letter requesting leave to file a Second Amended Complaint as set forth above no later than **February 29, 2024**.  In response to any such letter, by **March 14, 2024**, Defendants shall file a letter stating whether they consent to or oppose Plaintiff's filing a Second Amended Complaint and on what grounds.  Defendants' letter shall not exceed three pages.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 30.

Dated:  January 31, 2024
        New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**